THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MRS. SUMIATI, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | No. 08 C 03289 |
| | ) | |
| vs. | ) | Judge Hibbler |
| | ) | |
| HAMILTON SUNDSTRAND CORP., | ) | Magistrate Judge Nolan |
| a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## HAMILTON SUNDSTRAND'S RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND FOR ATTORNEY'S FEES

### I.    The Litigation History Is Significant And Supports Hamilton Sundstrand's Removal

Eighty-four plaintiffs filed complaints against Hamilton Sundstrand across ten lawsuits in the Circuit Court of Cook County between March 4, 2004 and February 19, 2008. Nine of the complaints were signed by Mr. Floyd Wisner. The lawsuits all arose from the crash of Garuda Airlines Flight No. GA-152 near Medan, Indonesia on September 26, 1997. Nine of the cases were consolidated in state court under *Sumiati.*[1]

On April 16, 2008, fifty plaintiffs from *Sumiati,* as well as certain additional plaintiffs from the voluntarily dismissed *Butar* action, filed *Mustika v. Honeywell International,* No. 08 C 2178 ("*Mustika*") in this Court. Mr. Wisner is the attorney representing all plaintiffs in the *Mustika* action. A document listing the plaintiffs in each action illustrating which fifty plaintiffs are common to both the *Sumiati* and *Mustika* actions is attached hereto as Exhibit A.

Shortly after the *Mustika* action was filed, Hamilton Sundstrand properly removed the state court *Sumiati* action to this Court in order to avoid a multiplicity of actions in the state and federal

---

[1]    The tenth lawsuit, *Butar v. Hamilton Sundstrand,* No. 08 L 1847, was filed in the Circuit Court on February 19, 2008 and voluntarily dismissed by the plaintiffs on May 22, 2008, after the filing of *Mustika* in federal court, and prior to the removal of *Sumiati.* The *Butar* plaintiffs are plaintiffs in the *Mustika* action.

courts.　Within two court days, Hamilton Sundstrand sought a finding of relatedness and consolidation of the *Sumiati* and *Mustika* actions, as both cases involve claims arising out of the September 1997 Garuda 152 occurrence and 75% of the plaintiffs are common to both cases.

Hamilton Sundstrand could have removed each of the 10 state court lawsuits on a piecemeal basis over four years, on the basis of diversity jurisdiction. Hamilton Sundstrand did not engage in such removal because there was no need to do so as all litigation arising out of the accident was filed in state court and consolidated without objection from the plaintiffs.

Prior to the filing of the *Mustika* action, consolidation of all of the state court cases into *Sumiati* achieved the objective of economy for both the Court and the parties by having all of the cases arising out of this crash managed by one jurist and decided in one court. However, that economy was thwarted when fifty of the same plaintiffs who had actions pending in the Circuit Court of Cook County, Illinois inexplicably switched to this court for the filing of *Mustika* – a case arising out of claims regarding the same GPWC product on the same GA-152 aircraft, and involving the same accident. Plaintiffs have filed numerous court papers in this action and in *Mustika*, including their opposition to consolidation of these actions, and have appeared at several hearings in both cases. Yet, plaintiffs have never disputed nor explained to Hamilton Sundstrand, Honeywell, or this Court why they are attempting to litigate in multiple forums. Plaintiffs have not provided any explanation as to why, after litigating the consolidated litigation in the Circuit Court, they have chosen to initiate litigation against defendant Honeywell in a different forum. Plaintiffs' silence is significant.

Hamilton Sundstrand recognized the need to avoid the multiplicity caused by plaintiffs' unexplained filing of *Mustika* in federal court. It appeared that one remedy against multiplicity was contained in the very federal statutes that were designed to consolidate multiple fatality air-disaster cases in one court — the multiparty, multiforum jurisdiction statute in 28 U.S.C. §1369 ("the Multi-

multi statute") and the removal statute contained in 28 U.S.C. §1441(e). Accordingly, Hamilton Sundstrand filed its notice of removal of *Sumiati* to this Court on June 6, 2008, and on June 10, 2008, promptly filed a motion for a finding that *Sumiati* and *Mustika* are related, for the purpose of having the cases consolidated before one federal judge.

## II. The Removal Of The *Sumiati* Action Satisfies The Substantive Criteria Of The Multi-multi Statute

Hamilton Sundstrand's notice of removal was expressly predicated upon the Multi-multi statute and the removal statute. Section 1369 provides that "[t]he district court shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location. . . ." Plaintiffs strain to draw distinctions between the nature of the claims pled in *Mustika* and *Sumiati*, but those are irrelevant, because the foregoing statutory criteria for Section 1369 have been met. More than 75 natural persons died in the crash of GA-152. Nothing in Section 1369 or Section 1441(e) requires that any particular factual or legal theory be pled in lawsuits arising from the accident. A defendant is empowered by 28 U.S.C. §1441(e)(1)(A) to remove a state court civil action to federal court if the action "could have been brought" in federal court under Section 1369 jurisdiction. In addition, removal is authorized where . . .

> . . . . the defendant is a party to an action which is or could have been brought, in whole or in part, under section 1369 in a United States District Court and arises from the same accident as the action in state court, even if the action to be removed could not have been brought in a district court as an original matter.

28 U.S.C. §1441(e)(1)(B).

Hamilton Sundstrand's removal was undertaken pursuant to subsection (e)(1)(B) of Section 1441 as well as subsection (e)(1)(A). The *Sumiati* cases could have been brought in federal court under Section 1369, and thus removed under subsection (e)(1)(A) of Section 1441. However, plaintiffs argue that the *Sumiati* cases could not have been brought in federal court under Section

1369. If the Court accepts plaintiffs' argument, then the *Sumiati* cases were still removable under subsection (e)(1)(B) of Section 1441, because that provision authorizes removal "even if the action to be removed <u>could</u> <u>not</u> <u>have</u> <u>been</u> <u>brought</u> <u>in</u> <u>a</u> <u>district</u> <u>court</u> as an original matter."

Congress put subsection (e)(1)(B) in the removal statute for a reason, as every legislature is presumed to have had a reason for including each provision of a statute that it enacts. Subsection (e)(1)(B) of Section 1441 is neither surplusage, nor intended as some kind of "backup" provision merely ancillary to subsection (e)(1)(A). Rather, subsection (e)(1)(B) has independent significance, and is designed to address fundamentally different circumstances from subsection (e)(1)(A). Subsection (e)(1)(A) authorizes removal of those state court actions which <u>could</u> <u>have</u> been brought in federal court under Section 1369. Subsection (e)(1)(B) authorizes removal which could <u>not</u> have been brought under Section 1369. Congress determined that the problem of multiplicity afflicting the nation's courts was so severe, that the problem had to be ameliorated and redressed with a separate statutory provision that would authorize removal to federal court of those state court actions that never could have been filed as original actions in federal court in the first place thus, deeming those non-1369 actions 1369 actions anyway.

Subsection (e)(1)(B) does require that the removing defendant be a party to an action already pending in federal court that either is brought, or could have been brought, under section 1369 and arises from the same accident as the removed state court action. *Mustika* satisfies the criteria for what plaintiffs call "piggy-back" jurisdiction. First, plaintiffs have asserted that they could assert a claim against Honeywell for successor liability. (Plaintiffs' response to Honeywell's motion to dismiss the complaint in *Mustika*, p. 3, n. 4). Second, Hamilton Sundstrand is indemnifying Honeywell against any liability in *Mustika* and completely controls Honeywell's defense in *Mustika*. On June 4, 2008, Honeywell first tendered indemnity and defense to Hamilton Sundstrand, pursuant to a 1993 Buy-Sell Agreement for the Hamilton Sundstrand subsidiary that

allegedly manufactured the GPWC on board GA-152. Hamilton Sundstrand accepted Honeywell's tender, and promptly filed its notice of removal just two days later, on June 6, 2008.

**III.    The Court Has Discretion To Allow Removal More Than 30 Days After Service Of The Complaints**

Plaintiffs argue that Hamilton Sundstrand's removal of *Sumiati* was untimely, because it was not effected within 30 days of service. This argument ignores important facts about the indemnity relationship between Hamilton Sundstrand and Honeywell in these actions, and also ignores the removal statute's unique vesting of discretion in this Court to allow removal of multiple-fatality disaster cases from state court to federal court at any time.

Hamilton Sundstrand's removal was undertaken as expeditiously as possible, in light of this defendant's relationship with Honeywell. Hamilton Sundstrand's removal of *Sumiati* under subsection (e)(1)(B) concededly was undertaken nearly three weeks after the first 30 days following the filing of *Mustika*. However, the notice was filed just two days after Hamilton Sundstrand was first able to avail itself of this provision, following Honeywell's tender of indemnity and defense, an event whose timing was completely out of Hamilton Sundstrand's control. Hamilton Sundstrand accepted Honeywell's tender of defense only a few weeks after the first 30 days had elapsed. Hamilton Sundstrand then filed its notice of removal with dispatch.

In addition to disregarding the foregoing facts, plaintiffs also ignore an important point of law-- the Court's discretion to allow both subsection (e)(1)(A) and (e)(1)(B) removals more than 30 days after service.    The last paragraph of 28 U.S.C. §1441(e)(1) provides that a party can remove an action more than 30 days after the filing of the action "with leave of the district court." Plaintiffs have not only ignored this unique discretionary provision of the statute, but argue that a Multi-multi case may not be removed under any circumstances more than 30 days after service. Plaintiffs argue that "[t]he removal requirements are mandatory," citing *Fellhauer v. City of Geneva*, a 1987 Northern District opinion that was issued 15 years before the enactment of the Multi-multi statute.

Plaintiffs also cite *Crum & Forester Managers Corp. v. Carney*, an unpublished 1988 Northern District opinion issued just one year later, to argue that the time limits for removal may not be "extended even by an Order of this Court." That assertion is manifestly untrue and flatly contradicted by the Court's authority under the plain language of the removal statute to grant leave for removal after the time limits set forth in the statute as identified above.

The Court should exercise its discretion to allow Hamilton Sundstrand's removal beyond the initial 30 days following service because Hamilton Sundstrand filed at its earliest opportunity to remove under both (e)(1)(A) and (e)(1)(B), and removal is essential to avoiding the multiplicity inflicted on the courts by the plaintiffs.

## IV. The Multi-multi Statute And Its Related Removal Provisions Are Remedial Statutes, Intended To Avoid A Multiplicity Of Lawsuits Arising From Multiple-Fatality Disasters

The Multi-multi statute and related removal provisions are clearly intended to remedy the problem of multiplicity inherent in multiple actions pending in multiple forums all arising from the same multiple-fatality accident. As one federal court of appeals has observed:

> [T]he [Multi-multi statute] was designed to *ameliorate* the restrictions on the exercise of federal jurisdiction that ultimately forced parties in multiple suits arising from the same disaster to litigate in several fora.

*Wallace v. Louisiana Citizens Property Insurance Corporation*, 444 F.3d 697, 702 (5th Cir. 2006) (emphasis supplied). Although the *Wallace* case involved facts different from those presented here, its analysis and consideration of the legislative purpose behind the Multi-multi statute is instructive. In conducting its analysis and ultimately determining that removal was proper, the First Circuit looked to the legislative background. The *Wallace* court cited and quoted a 1999 report from the House of Representatives regarding the then-proposed Multi-multi legislation:

> Current efforts to consolidate all state and federal cases related to a common disaster are incomplete because current federal statutes restrict the ways in which consolidation can occur — apparently without an intention to limit consolidation. . . . In sum, full

6

> consolidation cannot occur in the absence of federal legislative
> *redress*.

*Id*. (emphasis supplied).

As evidenced above, the Multi-multi statute was intended to "ameliorate" and "redress" a significant problem for the courts, the inability to otherwise completely consolidate multiple-fatality disaster cases. Therefore, the removal statute provisions specifically tailored for such actions are far more liberal for parties seeking removal than are other provisions of Chapter 89 of the United States Code. In *non*-Multi-multi cases, removal must be effected within 30 days after the defendants' receipt of a copy of a court paper from which it may be ascertained that the case is one that is removable, with a cutoff for removal of diversity actions at one year after the commencement of the action in most instances. 28 U.S.C. §1446(b). In striking contrast, there are no fixed limitations of any kind on a district court's authority to grant leave for removal of Multi-multi cases more than 30 days after any events triggering the right of removal. Clearly, this exceptional vesting of authority in the federal courts to allow removal of Multi-multi cases without any fixed time limit is intended to permit federal judges broad discretion to eliminate multiplicitous litigation arising from multiple-fatality accidents.

The remedial purpose of the statute is also reflected in the language of Section 1441(e)(1)(B), which permits removal of a state court action when "the defendant is a party to an action which is or could have been brought, in whole or in part, under Section 1369 in a United States District Court. . . , even if the action to be removed could not have been brought in a district court as an original matter." Section 1441(e)(1)(B) allows removal of a state court Multi-multi action that never could have been filed in federal court as an original matter, an exception that is not permitted for any other category of removal cases. This provision evidences an intention in the statute to prevent plaintiffs from circumventing the federal courts' broad discretion to eliminate multiplicity. For instance, a plaintiff cannot avoid Section 1369 simply by stating in a complaint

that federal jurisdiction over the action is based upon Section 1332 (diversity) or another label. The federal court is empowered to allow an action "which could have been brought in whole or in part, under section 1369" to ensure that the rationale behind combining multiplaintiff, multiforum cases is not thwarted.    Furthermore, Section 1441(e)(5) provides that "[a]n action removed under this subsection shall be *deemed* to be an action under section 1369 . . .." (Emphasis supplied).    This further reflects protection and advancement of the remedial purpose of Section 1369.    Reading Section 1441(e)(1)(B) and (e)(5) together, the statute provides that a state court action which could not have been brought in federal court under Section 1369 can nevertheless be removed to federal court, and once removed will be "deemed" to be an action under Section 1369.

Plaintiffs would like this Court to ignore the important rationale behind the statute and avoid acknowledging the purpose for which it was promulgated so they can continue to maintain 129 actions in state and federal courts for an improper purpose. However, defendant submits that this Court cannot ignore the remedial purpose of the Multi-multi statute and should ensure that the purpose is promoted. Plaintiffs omitted from their memorandum any reference to the unique liberal provision of Section 1441(e)(1)(B) that allows a federal judge to grant leave for removal of a Multi-multi case at any time. This Court has discretion to grant leave under the statute. Plaintiffs also fail to acknowledge the significance of Section 1441(e)(5) deeming removed cases to have been brought under Section 1369. This Court should not disregard this provision or the other remedial purposes outlined above.    These unique attributes of the Multi-multi statute and its associated removal provisions combine to support defendant's removal of this case so that these multiparty, multiforum cases can be addressed and decided in a single court.

Although plaintiffs argue that the removal provisions of the Multi-multi statute must be strictly construed, the sole authority that plaintiffs cite for this proposition, *Doe v. Allied Signal, Inc.*, 985 F.2d 908 (7th Cir. 1993), antedates the Multi-multi statute by almost a decade. Thus, *Doe*

is irrelevant to the Court's proper construction of the Multi-multi Statute and its removal provisions and has no application here.[2]

## V. The *Sumiati* Consolidated Cases Should Be Deemed To Arise From An Accident Occurring After February 1, 2003 For Purposes of Removal

The linchpin of plaintiffs' motion for remand consists not of any substantive provision of the statute, but rather a claim that Section 1369 can apply only to those accidents that occur on or after February 1, 2003. Plaintiffs argue that the Multi-multi statute cannot apply to the GA-152 accident because it occurred before this date.

Hamilton Sundstrand submits that equity and fairness require that if plaintiffs are allowed to use tolling provisions to bring their own wrongful death claim, then the Court should deem the accident upon which the plaintiffs have filed suit to have occurred after February 1, 2003 for purposes of Section 1369. Defendant submits that this Court should consider plaintiffs' "effective date" argument in favor of remand against the background of a remedial Multi-multi statute, and related removal provisions, that (i) vests the federal court with broad discretion to allow removal at any time, (ii) authorizes removal of an action that could not have been brought under Section 1369 as an original action, and then (iii) deems that removed action to be a Section 1369 action.

The *Sumiati* cases, like the *Mustika* case, were already in a unique time suspended procedural posture before removal. The minors' claims under the Illinois Wrongful Death Act in *Sumiati* and *Mustika* would have been time-barred as of September 27, 1999 by the applicable two-year statute of limitations, but for the tolling statute that applies to minors and certain others. 735 ILCS §13-211. That tolling statute provides:

---

[2] Plaintiffs' assertion that the *Doe* court held that "any doubts must be resolved against removal," is inaccurate. What the court of appeals actually stated was that "[a]ny doubt regarding jurisdiction should be resolved in favor of the states." *Doe v. Allied Signal*, 985 F.2d 908, 911 (7th Cir. 1993). The state sovereignty concern that underlay the *Doe* court's actual pronouncement has no place in any analysis of the Multi-multi statute and its removal provisions, which were intended by Congress to remedy the problem of multiplicity in state and federal courts in multiple-fatality disasters by creating a unique procedural vehicle to remove state court cases to federal court for consolidation in one forum.

Minors and persons under legal disability. If the person entitled to bring an action, specified in Sections 13-201 through 13-210 of this Act [personal actions], at the time the cause of action accrued, is under the age of 18 years, or is under a legal disability, then he or she may bring the action within two years after the person attains the age of 18 years, or the disability is removed.

735 ILCS 5/13-211.[3]  The Illinois courts have held that "the period of limitations for filing the suit does not begin to run until the disability is removed." *Haas v. Westlake Community Hospital*, 82 Ill. App.3d 347, 349, 402 N.E.2d 883, 884 (1st Dist. 1980). Before that time, the putative plaintiff "is not affected by the limitations period in the statute." *Id.*, 402 N.E.2d at 885. Thus, under Illinois law, the tolling of a statute of limitations, pursuant to 735 ILCS 5/13-211, prevents the statute of limitations period for a wrongful death claim from even beginning to run as of the actual date of an occurrence, preventing the cause of action from accruing on the actual occurrence date. Instead, Illinois law deems the cause of action to have accrued at a later time. Thus, where the limitations period for filing a wrongful death action has been successfully tolled, a lawsuit can be filed two years after the deemed date of the event from which the cause of action accrues.

All of the *Sumiati* lawsuits were filed more than two years after the crash with the last filed action, *Siregar v. Hamilton Sundstrand*, No. 07 L 6356, filed on June 20, 2007, almost ten years after the accident. For the purpose of permitting the *Sumiati* and *Mustika* plaintiffs to file their lawsuit at all, the law considers the cause of action accrual event, the accident, to have occurred no more than two years prior to the filing of the wrongful death complaint. Fundamental fairness and public policy require that as the crash of GA-152 is deemed to have occurred years after September 26, 1997 for the purpose of enabling plaintiffs to sue Hamilton Sundstrand, the accident date should

---

[3]  The Illinois Wrongful Death Act has a like provision which states, "[h]owever, if a person entitled to recover benefits under this Act, is, at the time the cause of action accrued, within the age of 18 years, he or she may cause such action to be brought within 2 years after attainment of the age of 18. " 740 ILCS 140/2.

likewise be deemed to have occurred after February 1, 2003 for the purpose of enforcing public policy and promoting the purposes of the Multi-multi statute.

Defendant has found no cases which specifically address whether an accident date may be deemed to have occurred on a date other than the actual date for the purpose of the Multi-multi statute. However, that is not surprising since the entire body of case law under this relatively recent statute is very limited, with a majority of the cases addressing the question of whether Hurricane Katrina constituted an "accident" for the purpose of the statute. *See, e.g., Fidelity Homestead Ass'n v. Hanover Ins. Co.,* 2006 WL 2873562 (E.D. La. 2006), and other Eastern District of Louisiana cases collected at 2006 A.L.R. Fed. 2d 21, §18.

Despite the lack of specific case law addressing the interplay of 735 ILCS 5/13-211 and the Multi-multi statute, some general guidance is afforded by the recent Illinois Appellate Court opinion of *Reilly v. Wyeth,* 377 Ill. App. 3d 20 876 N.E.2d 740 (1st Dist. 2007). In *Reilly,* the court was faced with the task of considering a minor plaintiff's right to bring an action despite the Federal Vaccine Act, which was enacted for several purposes, including keeping vaccine manufacturers in the marketplace.

In *Reilly,* the Appellate Court held that a personal injury action alleging that a minor's autism was caused by exposure to a mercury-based preservative in several childhood vaccines was barred because plaintiff had failed to file a petition in the Court of Federal Claims within 36 months of his injury, as required by the National Childhood Vaccine Injury Act of 1986 (the "Vaccine Act"). *Reilly,* 876 N.E.2d at 752. Plaintiff argued "that the lack of an equitable tolling provision under the Act for minors runs counter to Illinois public policy, which provides special protection for minors' rights and allows them to bring a tort action two years after attaining the age of 18 (735 ILCS 5/13-211)." *Id.* The Appellate Court was faced with weighing the minor's right to bring a claim against the public policy objectives behind the Vaccine Act, which included keeping vaccines

in the marketplace. The Appellate Court rejected plaintiff's argument that plaintiff's claim should prevail despite the Vaccine Act, finding, among other things, that the Vaccine Act could not be deemed inconsistent with Illinois public policy, and that through the Act Congress sought to achieve certain public policy objectives, including keeping vaccine manufacturers in the market, an objective that would have been thwarted by "protracted" litigation over vaccine claims. *Reilly*, 876 N.E.2d at 753.

In *Reilly*, the court actually barred plaintiff's action to achieve the public policy objectives outlined through the Vaccine Act. Here, Hamilton Sundstrand undertook to achieve the public policy objectives of the Multi-multi statute, resulting in consequences far less severe - removal of plaintiffs' state court cases to the federal forum chosen by plaintiffs for their newest lawsuit arising from the same accident. Defendant requests only that if minor plaintiffs' right to file multiple wrongful death lawsuits over a period of up to twenty years is to be protected, that the public policy purpose of consolidating these multiparty, multiforum actions and avoiding multiplicity be acknowledged, recognized, and protected. The rationale behind avoiding multiparty, multiforum litigation serves to protect not only defendant, but also the state and federal courts from having their limited resources taxed with duplicative litigation. In *Reilly*, the court precluded the minor's right to bring a claim against a vaccine manufacturer, to effectuate the Vaccine Act's purposes. Here as in *Reilly*, plaintiffs' claimed rights must be scrutinized in light of an important federal remedial policy. Defendant submits that plaintiffs' intent to bring multiple actions arising out of the same aircraft accident, which involved the same GPWC product and the same defendant must be considered against the Multi-multi statute's purposes to join such actions and address them in a single court.

Here, plaintiffs have utilized the tolling statute to bring multiple wrongful death lawsuits in state and federal forums, some six years after the Multi-multi statute was enacted to ameliorate and

redress the problem of multiplicity. Separating these actions between the state and federal forums ignores the important recently codified Multi-multi statute and thwarts the public policy of avoiding multiplicity by consolidating multiple fatality disaster cases in one forum. The Court should not allow the plaintiffs to use the Illinois tolling statute as a tool to avoid the implementation of remedial federal legislation against multiplicity, just as the Illinois Appellate Court in *Reilly* did not allow a minor plaintiff to use tolling provisions to undermine the purposes behind a federal remedial statute protecting childhood vaccines. The Court should emulate the "deeming" language of the statute with regard to the accident from which plaintiffs' cause of action accrued, and deem the accident to have occurred after February 1, 2003 to further the purposes of removing these claims and allowing them to proceed in one court, not plaintiffs' purpose in pursuing multiple lawsuits in different forums eleven years after the GA-152 accident.[4]

## VI.   Even Assuming, *Arguendo*, The Court Orders A Remand, Attorney's Fees Are Not Warranted

Contrary to plaintiffs' suggestion, an award of attorney's fees to the plaintiffs upon the remand of a removed action is discretionary, not mandatory. Indeed, in a recent opinion involving a remand under the Multi-multi statute, a federal court of appeals affirmed the district court's denial of plaintiff's motion for fees. *Yount v. Lafayette Insurance Co.,* 245 Fed. Appx. 245, 2007 WL 2007 512 (5th Cir. 2007). The Fifth Circuit noted that it was reviewing the district court's denial of attorney's fees under an abuse of discretion standard. *Yount,* at **1. The Fifth Circuit held that the district court may award attorney's fees only where the unsuccessful removing party lacked an objectively reasonable basis for seeking removal. *Id.* In concluding that the district court did not abuse its discretion in finding that the unsuccessful removing party did have such a basis, the Fifth Circuit noted "the lack of any judicial precedents" under the Multi-multi statute. *Yount,* at **2.

---

[4]   As plaintiffs themselves point out, all of the *Sumiati* consolidated lawsuits were filed after February 1, 2003, with filing dates ranging from March 4, 2004 through June 20, 2007, and *Mustika* was filed on April 16, 2008, more than 10 years after the crash.

The sole case cited by plaintiffs in support of their request for an award of attorney's fees is wholly inapposite. While the Seventh Circuit in *Garbie v. DaimlerChrylser Corp.*, 211 F.3d 407 (7th Cir. 2000), held that "bad faith . . . is not essential to an award," 211 F.3d at 410, it did <u>not</u> hold that "attorneys' fee should be normal incidents of remands," as asserted by plaintiffs. It is also important to note that in *Garbie* the Seventh Circuit concluded that "Chrysler's conduct throughout this litigation *has* been in bad faith . . .." 211 F.3d at 410-411(emphasis original). The award of fees in *Garbie* was based on a long history of negative behavior. The court of appeals noted that not only was Chrysler's removal improper, but the company had "filed a frivolous appeal and a frivolous petition for mandamus." 211 F.3d at 410. Moreover, the Court opined that "Chrysler has behaved absurdly -- not only throughout this case, but also in other similar suits, all of which Chrysler removed and all of which have been remanded by federal judges across the nation." 211 F.3d 410. Thus, it was evident that the award was not solely for removal but rather for all of Chrysler's misdeeds.

To avoid multiplicity and to effect the remedial policies of the Multi-multi statute, Hamilton Sundstrand has made legitimate arguments. Hamilton Sundstrand has reasonably argued that just as the crash GA-152 is deemed to have occurred after February 1, 2003 for wrongful death claim limitations purposes, the same "legal fiction" should also be deemed true for the purpose of the Multi-multi statute. Whether one considers this to be an extension or modification of existing law, or "the establishment of new law," Fed. R. Civ. P. 11(b)(2), the argument is objectively reasonable. The Fifth Circuit in *Yount* noted the lack of judicial precedents under the Multi-multi statute and related removal provisions. Thus, plaintiffs' requests for costs is misplaced as it would be improper to penalize Hamilton Sundstrand for its reasonable effort to protect itself and the courts from multiplicity of actions in the state and federal courts when the incident arises out of one airline accident and the very same GPWC unit in all cases.

14

## VII.    Defendant's Removal Was Not Undertaken To Delay This Action

Plaintiffs' recitation of the procedural posture of the *Sumiati* case at the time of the removal is misleading.  While it is true that Judge Solganick had put fact deadlines in place, that was done in response to multiple motions to compel the setting of plaintiff depositions.  It is important to note that by agreement of the parties, and with Judge Solganick's consent, liability discovery had been delayed to allow all parties to focus on plaintiffs' depositions and plaintiffs' assertion regarding damages.  Contrary to plaintiffs' suggestion, answers to liability discovery were also owed by the plaintiffs and motions to compel plaintiffs to provide those responses were also pending.

Despite the Wisner plaintiffs' suggestion that the status of discovery and the state court's case management dates prompted removal – it was the Wisner plaintiffs' new filing of the *Mustika* action arising out of the GA-152 accident against a new defendant in a new court that precipitated removal.

## VIII.    Conclusion

The Court should deny plaintiffs' motion for remand.  The *Sumiati* consolidated cases should remain before this Court, the only place they can be consolidated with *Mustika*, and then be heard and decided together by one judge.

_____/s/ William F. DeYoung_____
One of the Attorneys for Defendant
HONEYWELL INTERNATIONAL, INC.

William F. DeYoung
Loretto M. Kennedy
Mark A. Stang
Kendall E. Woods
CHUHAK & TECSON, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 444-9300

STATE OF ILLINOIS       )
                             ) ss:
COUNTY OF COOK       )

## AFFIDAVIT OF SERVICE

I, Kendall E. Woods, an attorney, state that I caused a true and correct copy of Hamilton Sundstrand's memorandum in opposition to plaintiff's motion to remand and for attorneys' fees a copy of said document having been simultaneously served upon the parties, to be served via the CM/ECF system, which will send notification of such filing to all parties listed as attorneys of record, before 5:00 p.m. on the 2nd day of September, 2008, upon the following counsel of record:

Floyd A. Wisner, Esq.
Wisner Law Firm
934 S. 4th St.
St. Charles, IL 60174
Telephone: (630) 513-9434
Facsimile: (630) 513-0716

/s/ Kendall E. Woods

793991/1/14158/26934

# Exhibit A

Case 1:08-cv-03289    Document 17-2    Filed 09/02/2008    Page 1 of 4

# Garuda Flight GA-152

## APPENDIX OF PLAINTIFFS

| Sumiati Plaintiffs (08 C 3289) | Mustika Plaintiffs (08 C 2178) |
|---|---|
| Yudi Relawanto | Yudi Relawanto |
| Raden Heri Sugiharto | Raden Heri Sugiharto |
| IR Agus Irawan | IR Agus Irawan |
| Ella Madanela Dwi Mustika | Ella Madanela Dwi Mustika |
| Ms. Nia Astrina | Nia Astrina |
| Mrs. Efny Syahril | Efni Syahril |
| Diana Pohan Njo | Diana Pohan Njo |
| Edi Junaidi | Edi Junaidi |
| Zahara Aini Binti Ali Hamza | Zahara Aini Binti Ali Hamzah |
| Gunawan Pribadi | Gunawan Pribadi |
| Mrs. Yenti | Yenti |
| Mr. Irvan | Irvan |
| Mrs. Nurlaelasari | Nurlaelasari |
| Ludwina Barise Dachi | Ludwina Barise Dakhi |
| Roswita Tambunan | Roswita Tambunan |
| Dani Aryanto (substituted as special administrator for Haji T.R. Malikul) | Haji T.R. Malikul |
| Mariana Panggabean | Mariana Panggabean |
| Mrs. Neni Dwi Astuti Hutagalung | Neni Dwi Astutit Hutagalung |
| Mr. Effendi | Effendi |
| Baginda Nababan | Baginda Nababan |
| Dra Nur Hayati | Dra Nur Hayati |
| Mrs. Holidah Wati Lubis | Holidah Wati Lubis |
| Mrs. Salmiah | Salmiah |
| Andri Jufri | Andri Jufri |
| Lina Taruddin | Lina Taruddin |
| Ms. Nurvina Arfa | Nurvina Arfa |

| **Sumiati Plaintiffs (08 C 3289)** | **Mustika Plaintiffs (08 C 2178)** |
|---|---|
| Mrs. Nurlely | Nurlely |
| Utri Rahayu Tejaningsih Likhomsatun | Utri Rahayu Tejaningsih Likhomsatun |
| Arjunaidi Marbun | Arjunaidi Marbun |
| HJ Nurhasni | Nurhasni |
| Mifie Soeradjie | Mifie Soeradjie |
| Mr. Paingot Marpung | Paingot Marpung |
| Mrs. Suarni | Suarmi |
| Yanti Faridah Nasution | Yanti Faridah Nasution |
| Sri Rohani | Sri Rohani |
| Mrs. Sri Elvi Heriyati | Sri Elvi Heriyati |
| Roro Putri Lystia | Roro Putri Lystia |
| Ms. Yulie Ayu Utari | Yulie Ayu Utari |
| Syarifah Lubis | Syarifah Lubis |
| Mrs. Sumiati | Begening Below Sumiati |
| Mrs. Ngatmi | Ngatmi |
| HJ Siti Juliana Dalimunthe | HJ Siti Juliana Dalimunthe |
| Mrs. Suyanti | Suyanti |
| Hanafi S. Guciano | Hanafi Guciano |
| Mrs. Juliana Kurniawan | Juliana Kurniawan |
| Mrs. Wenila | Wenila |
| Mrs. MA Eliza Maminta-Wijaya | Eliza Maminta-Wijaya (and Rusmin Wijaya) |
| Mr. Iqbal | Iqbal |
| Tutik Heryantinah | Tutik Heryantinah |
| Mrs. Khairunnisak | Khairunisak |
| Mr. Mursal | Hotman Butar Butar |
| Adi Dharmawan Ardjasoebrata | Hamid Siregar |
| Mrs. Belinda Adelin | Tauhiddiah |
| Budi Ashsiddiq Manggala | Barisah |
| Mrs. HJ Sisiliana, SH | Wiliater Situmorang |
| Ade Rinada Lubis | |

**Sumiati Plaintiffs (08 C 3289)**                    **Mustika Plaintiffs (08 C 2178)**

Mr. Raja Heru Permadi

Mrs. Norita Boru Lumban Teruan

Mrs. Makiah

Mrs. Triana Sari

Taufik Siregar

Mrs. Salmah Aisyah

Mr. Ricardo Simamora

Indra Syafrin

Mrs. Saliah

Mr. Arjuna Roushdie

IR. Erna Widayanti

Sihtiati Kombaram

Ms. Marissa Sylvia Regina

Mr. Armansyah Sitepu

Mrs. Khairani

Ms. Eka Yunita

Cristine Cory Isabela S.

Barbara Slater

Mrs. Rosmiati

Mrs. Erika Sitanggang

Mrs. Indrawati

Mrs. Nurfachiy AH Ningsih

Ms. Pangesty Anggraeny